## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RAYMOND E. THOMPSON,         )
                                        )
              **Plaintiff,**       )
                                        )    **CIVIL ACTION**
v.                                )
                                        )    **No. 14-2019-JWL**
CAROLYN W. COLVIN,        )
**Acting Commissioner of Social Security,** )
                                        )
             **Defendant.**    )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) step four finding and in his alternative step five finding regarding the period before July 31, 2012, the court ORDERS that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.      Background

Plaintiff applied for DIB, alleging disability beginning December 9, 2008. (R. 15, 193-99). At the hearing, through counsel Plaintiff amended his onset date to September

21, 2009, the date he was terminated from his job due to the inability to perform all of the functional requirements of that job.  (R. 42-43).  In due course, the Commissioner issued a decision finding Plaintiff was disabled beginning on July 31, 2012 but not before that date.  (R. 11-27).  Plaintiff appealed the decision to the Appeals Council, who denied his request for review (R. 1-5, 9-10, 310), and he now seeks judicial review of the final decision.  Plaintiff claims the ALJ erred in failing to utilize his amended onset date and in failing to adequately distinguish his residual functional capacity (RFC) before July 31, 2012 from his RFC thereafter; that the RFC assessed is unsupported by the record evidence; that the step four finding (that before July 31, 2012 Plaintiff was able to perform his past relevant work as a warehouse order filler) is erroneous as a matter of law; and that the ALJ's determination that Plaintiff's allegations of symptoms were not credible before July 31, 2012 but credible thereafter is unsupported by record evidence.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

2

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that even assuming, without deciding, that the ALJ's RFC assessment is supported by substantial evidence, remand is necessary because of error in the step four and alternative step five findings.  Plaintiff may make his arguments regarding use of the amended onset date, credibility determination, and RFC assessment to the Commissioner on remand.  Herein, the court considers and decides only the alleged errors regarding the step four and step five determinations.

**II.      Step Four and Five**

4

Plaintiff claims the ALJ erred at step four by failing to make specific on-the-record findings regarding the physical and mental demands of his past relevant work as an order filler as required by Soc. Sec. Ruling (SSR) 82-62.  (Pl. Br. 17-18) (citing Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996)).  The Commissioner responds that the alleged step four error "was cured by the ALJ's alternative step-five finding that Plaintiff could perform other work in the national economy" (Comm'r Br. 11), and that the ALJ applied the Medical-Vocational Guidelines (the grids) found in the regulations at 20 C.F.R. Pt. 404, Subpt. P, App. 2 as a framework to determine that there is work in the national economy available for a person with the RFC assessed for Plaintiff.  (Comm'r Br. 11-13).  In his Reply Brief, Plaintiff complains that this argument is merely post-hoc rationalization and that the ALJ improperly applied the grids to direct a finding of "not disabled," despite also finding that Plaintiff has non-exertional limitations which do not precisely match the criteria of the grids.  (Reply 7-8).

At step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases.  Winfrey, 92 F.3d at 1023 (citing SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)).  In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations."  Winfrey, 92 F.3d at 1023.  In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work."  Winfrey, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations

found in phase one."  Id., 92 F.3d at 1023.  These findings are to be made on-the-record

by the ALJ.  Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting

Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding

each of the three phases).

In his step four evaluation, the ALJ determined that, "[p]rior to July 31, 2012 the

claimant was capable of performing past relevant work as an order filler, warehouse,"

because such "work did not require the performance of work-related activities precluded

by" Plaintiff's RFC.  (R. 21).  Moreover, the ALJ determined that before July 31, 2012

Plaintiff had the RFC "to perform a wide or essentially full range of 'light' work, as

defined in" the regulations.  (R. 21).  Implicit in these two findings is the ALJ's

determination that Plaintiff had past relevant work as an order filler, and that work was

performed at the light exertional level.

Earlier in his decision, the ALJ found that from December 9, 2008 through

September 21, 2009 Plaintiff performed substantial gainful activity "in the form of

performing modified 'light' work, on an 8-hours, 5 days a week basis."  (R. 17) (citing

Ex. 2E, p.2 (R. 211)).  The ALJ found that after his work injury on December 9, 2008

Plaintiff "was approved for 'modified' light work" which he performed "with his former

employer until September 21, 2009."  Id. at 18.  The ALJ noted that Dr. Shriwise treated

Plaintiff on July 20, 2009, and found that Dr. Shriwise "approved of the claimant's new

job, order filler, which filled his modified 'light' duty status."  (R. 18) (citing Ex. 5F, p.2

(R. 404)).  The ALJ stated both that Plaintiff "continued to perform modified 'light' work

until September 21, 2009, when he was laid off" (R. 20), and that Plaintiff "did perform 'light' work until September 21, 2009."  (R. 21).

The court notes that the record evidence does not support the ALJ's finding that the job of an "order filler, warehouse" was past relevant work.  As the ALJ explained:

> The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA [(substantial gainful activity)].

(R. 17) (citing 20 C.F.R. §§ 404.1560(b), 404.1565).

Plaintiff's Work History Report details but a single job for Plaintiff from May 1989 through September 2009 - a loader at a distribution center.  (R. 210-19) (Ex. E2).  Moreover, the vocational expert (VE) testified at the hearing that based upon the "E exhibits," Plaintiff had one Dictionary of Occupational Titles (DOT) job description from 1990 through 2009 - a material handler with K-Mart.  (R. 40-41).  He testified that this position had a DOT code of 929.687-030, required a specific vocational preparation (SVP) of 3, and was performed at the heavy exertional level.  Id. at 41.  Plaintiff confirmed the VE's testimony.  Id.

The VE testified that the RFC provided by the ALJ in the hypothetical question was "close to the full range of light, unskilled work" (R. 66), and that an individual with such capabilities would be able to perform the representative jobs of a cashier or a counter rental clerk position.  (R. 66-69, 85-86).  There is simply no record evidence in

7

the "E exhibits," in Plaintiff's Work History Report, or in the VE testimony that Plaintiff

has past relevant work as an "order filler, warehouse," or that such work was performed

at the "light" exertional level as defined in the <u>DOT</u> or in the regulations.

The decision suggests that the ALJ found past relevant work based upon evidence

that from December 9, 2008 through September 21, 2009 Plaintiff performed substantial

gainful activity "in the form of performing modified 'light' work, on an 8-hours, 5 days a

week basis." (R. 17). However, the ALJ cited Plaintiff's Work History Report for that

finding (R. 17) (citing Ex. 2E, p.2 (R. 211)), and that report suggests nothing regarding

work at the light exertional level. The report reveals that the heaviest weight lifted in

Plaintiff's past work was "100 lbs.... or more," and that Plaintiff frequently lifted "50 lbs,

or more." (R. 211). That report provides no support for a finding that Plaintiff performed

work as an "order filler, warehouse" or that such work was done at the light exertional

level. The decision also suggests that the ALJ reached his finding regarding past relevant

work from Dr. Shriwise's treatment note in which he "approved of the claimant's new

job, order filler, which filled his modified 'light' duty status." (R. 18) (citing Ex. 5F, p.2

(R. 404)). This suggestion is also unavailing. Dr. Shriwise did note on July 20, 2009 that

Plaintiff "is now working in receiving and order filling, and thinks he can tolerate this job

better than his prior job as a shipper." (R. 404). However, in context, it is clear that both

of the jobs mentioned by Dr. Shriwise (receiving and order filling, and shipper) were

included within the job of a "material handler" as testified by the VE. Moreover, Dr.

Shriwise did not suggest that the "receiving and order filling" job was at the light

exertional level as defined in the <u>DOT</u> or the Social Security regulations.  Rather, he stated that Plaintiff "may continue his current <u>light duty work</u> with the restrictions of 06/25/2009."  (R. 404) (emphasis added).  Again, in the context of Plaintiff's work-related injury at the K-Mart distribution warehouse and his return to work in a limited duty status, "light duty work" as used in Dr. Shriwise's treatment note refers to performing limited duty work at Plaintiff's place of employment with certain specific restrictions imposed on June 25, 2009.  The court is unable to find any record dated June 25, 2009 imposing specific work restrictions on Plaintiff.  Therefore, neither the court nor the ALJ is able to determine whether those restrictions allow for the performance of the full range of light exertional work, or some lesser work--even a limited range of sedentary work.

Finally, as the discussion above confirms, even if it were possible to determine that Plaintiff had past relevant work as an "order filler, warehouse," it is impossible to tell from the record evidence what the physical and mental demands of that job were, either as performed by Plaintiff, or as usually performed in the economy.  Substantial evidence does not support the ALJ's step four finding that Plaintiff is able to perform past relevant work as an "order filler, warehouse."

Contrary to the Commissioner's argument, the ALJ's alternative step five finding cannot save the decision at issue.  The ALJ stated that the VE interpreted the hypothetical RFC assessed prior to July 31, 2012 "to represent a wide or essentially full range of 'light' work."  (R. 21-22).  The ALJ then determined that "a finding of 'not disabled'

relevant to this earlier period, would also be directed at Step 5." (R. 22). But, as Plaintiff points out, it is error to use the grids to <u>direct</u> a finding when the claimant's RFC includes non-exertional limitations.

In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants. <u>Heckler v. Campbell</u>, 461 U.S. 458, 468 (1983). However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately." <u>Id.</u> 461 U.S. at 462 n.5; <u>see also</u> <u>Channel v. Heckler</u>, 747 F.2d 577, 579 (10th Cir. 1984). Because the grids are based upon the physical exertion requirements for work in the national economy, they may not be fully applicable for claimants who have non-exertional limitations. <u>Channel</u>, 747 F.2d at 580. Realizing this limitation on the use of the grids, the Commissioner has promulgated a procedure for evaluating claims where both exertional and nonexertional limitations are present:

> (2) [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); <u>see also</u> <u>Channel</u>, 747 F.2d at 580-81.

The grids direct a finding in a particular case only when there is an "exact fit" between the criteria of the grid and the situation before the ALJ.  <u>Campbell</u>, 461 U.S. at 468; <u>Channel</u>, 747 F.2d at 579.  Where the grid rules do not direct a finding, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor."  20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); <u>see</u> <u>also</u> <u>Channel</u>, 747 F.2d at 579-82 (application of the grids where non-exertional limitations are present).

Where plaintiff is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the grids.  <u>Channel</u>, 747 F.2d at 582 (error to apply the grids absent a finding that plaintiff could perform the full range of sedentary work).  Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [plaintiff] is or is not disabled."  <u>Channel</u>, 747 F.2d at 583.  Where non-exertional limitations affect the range of work of which a claimant is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics.  <u>Gossett v. Bowen</u>, 862 F.2d 802, 806 (10th Cir. 1988).

But, "[T]he mere presence of a nonexertional impairment does not automatically preclude reliance on the grids.  Use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [plaintiff].'"

Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)).  Thus, use of a vocational expert is required where plaintiff's non-exertional impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in occupational resources upon which the Commissioner may rely, see 20 C.F.R. § 404.1566(d)) establishes that a significant number of jobs of which plaintiff is capable are available.  Where the grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs.  Campbell, 461 U.S. at 468-70.

Grid rules 202.21 and 202.22 direct a finding of "not disabled" for a "younger individual," who is a "high school graduate" and whose previous work experience is "semiskilled," whether he has transferable skills or not.  20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 202.21, 202.22.  Plaintiff would be an "exact fit" to one of these criteria except that he has non-exertional limitations including only occasional crawling or occasional bilateral overhead reaching, and no more than frequently climbing ladders, ropes, and scaffolds.  Therefore, the grid rules may be used only as a framework for decision, and the ALJ erred in using them to direct a decision.

The Commissioner argues that if the grids had been used properly as a framework for decision, the same decision would be reached (that Plaintiff is not disabled) because SSR's 83-14 and 85-15 explain that the non-exertional limitations here do not have a significant impact on the occupational base for light work. Perhaps the Commissioner's argument is correct.  However, the court may not re-weigh the evidence and substitute its

12

judgment for that reflected in the decision at issue.  It is the Commissioner's responsibility to determine disability in the first instance, and here she determined (through the ALJ) that the grids <u>direct</u> a finding.  That determination is erroneous, and it is for the Commissioner to apply the grids as a framework in this case in the first instance.

The further argument might be made that the VE testified that the hypothetical question reflected "close to a full range of light work" (R. 66), and that an individual with such an RFC would be able to perform a significant number of jobs in the economy, and the decision should be affirmed on that basis.  There are two problems with this argument.  First, although the VE testified that the hypothetical individual could perform a significant number of jobs in the economy, the ALJ chose not to rely on this testimony, and instead used the grids.  The court may not substitute its judgment for that of the ALJ, particularly because it does not know the basis for the decision to rely on the grids.  Second, and perhaps more importantly, the hypothetical question presented to the VE does not match the RFC assessed for Plaintiff.  The hypothetical presented to the VE stated that the individual could reach <u>frequently</u> bilaterally and said nothing regarding <u>overhead</u> reaching, whereas the RFC assessed by the ALJ stated that Plaintiff could only <u>occasionally</u> reach <u>overhead</u> bilaterally.  VE "testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner]'s decision."  <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1340 (10th Cir. 1993).  Therefore, the court is compelled to find that the VE

13

testimony is not evidence which would support a finding that Plaintiff can perform close to a full range of light work.

Finally, the court notes that Plaintiff's Brief also poses serious questions regarding the applicability of Dr. Verner's medical opinion to the period after July 31, 2012 but not to the period before July 31, 2012, and regarding the different credibility findings applied to Plaintiff's allegations before and after that date. Those questions must be addressed by the Commissioner on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 24th day of February 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**